UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TONYA PHILPOT,

        Plaintiff,

      v.                                            **DECISION AND ORDER**
                                                            17-CV-613S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Tonya Philpot brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security that denied her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

        2.        Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (Docket Nos. 8, 11), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is DENIED, and Defendant's motion is GRANTED.

        3.        On October 21, 2013, Plaintiff protectively filed an application for DIB and SSI with the Social Security Administration ("SSA"). (R.[1] at 209-17). Plaintiff alleged disability since April 14, 2013, due to headaches and post-traumatic stress disorder ("PTSD"). (R. at 236, 272). On January 8, 2014, the SSA denied Plaintiff's applications

---

[1] Citations to the underlying administrative record are designated as "R."

1

(R. at 141-52), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 153-4). On June 27, 2016, ALJ Karen Wiedemann held a hearing at which Plaintiff, assisted by counsel, and vocational expert ("VE") Elizabeth Wheeler appeared and testified. (R. at 36-67). At the time of the hearing, Plaintiff was 31 years old (R. at 209), with at least a 12th grade education (R. at 41), and past work experience as a fast food worker (R. at 61-62, 237-8, 255-62). The ALJ considered the case *de novo* and, on August 2, 2016, issued a written decision denying Plaintiff's application for benefits. (R. at 17-35). The Appeals Council denied Plaintiff's request for review on May 5, 2017. (R. at 1-6). Plaintiff filed the current action on July 5, 2017, challenging the Commissioner's final decision.[2] (Docket No. 1).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the function of a reviewing court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks omitted). The Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).

---

[2] The ALJ's August 2, 2016 decision became the final decision of the Acting Commissioner of Social Security ("Commissioner") on this matter when the Appeals Council denied Plaintiff's request for review.

Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled within the meaning of the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

7. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not,

3

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

8. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. The ALJ's decision analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 14, 2013, the alleged onset date. (R. at 22). At step two, the

ALJ found that Plaintiff had the following severe impairments: history of arthroscopic knee surgeries; obesity; asthma; occipital neuralgia and migraines; anxiety/post-traumatic stress disorder ("PTSD"); major depressive disorder ("MDD") and attention deficit hyperactivity disorder ("ADHD"). (R. at 22-23). At step three, the ALJ found that Plaintiff's impairments, singly or in combination, did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23-24).

10. Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with certain exceptions[3]. (R. at 24-30).

11. At step four, the ALJ found that Plaintiff could not perform her past relevant work. (R. at 30). At step five, the ALJ relied on the VE's testimony and found that Plaintiff can perform jobs that exist in significant number in the national economy given her age, education, work experience, and RFC. (R. at 30-31). Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act. (R. at 31).

12. Plaintiff argues that the ALJ's determination of her RFC is not supported by substantial evidence because the ALJ failed to incorporate all of Plaintiff's non-severe impairments into her RFC determination. (Docket No. 8 at 13-15). Specifically, Plaintiff contends that despite the fact that the ALJ's RFC determination restricted Plaintiff to "work that is simple, routine and repetitive involving simple work[-]related judgment " as well as that which limits Plaintiff to only occasional interaction with the general public (R. at 24-

---

[3] The ALJ found that Plaintiff retained the RFC for light work, except that such work must be simple, routine and repetitive involving simple work related judgment such that the Plaintiff can understand, remember and carry out; limit Plaintiff's interaction with the general public to only occasional instances, and must not expose Plaintiff to concentrated extreme cold or humidity, or fumes, odors, dusts, and gases in the workplace. (R. at 24).

5

30), the ALJ "did not incorporate the Plaintiff's limitations in concentration, persistence and pace into the RFC assessment." (Docket No. 8 at 15).

13. An ALJ has the responsibility to determine a claimant's RFC based on all the relevant medical evidence and other evidence on the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c). The claimant has the burden to demonstrate functional limitations that preclude any substantial gainful activity. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(c), 404.1545(a)(3); SSR 96-4p, 1996 WL 374187; see also Bowen, 482 U.S. at 146 n.5. There has been no objection to the ALJ's assessment of Plaintiff's physical impairments, so we restrict our inquiry to the ALJ's evaluation and discussion of Plaintiff's mental impairments.

14. The ALJ found that Plaintiff had mild restriction in activities of daily living and moderate difficulties with social functioning, concentration, persistence, or pace related to PTSD, ADHD, and anxiety. (R. at 23-24, 29). Plaintiff points to an ALJ's obligation when determining a claimant's RFC to conduct a detailed assessment "itemizing various functions contained in the broad categories found in paragraphs B and C [of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF[4]]." Gillie v. Colvin, 2016 U.S. Dist. LEXIS 119500 at *19 (W.D.N.Y. Sept. 3, 2016) (quoting Karabinas v. Colvin, 16 F. Supp.3d 206, 215 [W.D.N.Y. 2014]) (citations omitted). (Docket No. 8 at 14).

15. In doing so, Plaintiff seems to argue that a failure to explicitly include the phrase "moderate limitations in concentration, persistence and pace" in either the RFC analysis or hypothetical questions posed to the VE constitutes a failure to account for

---

[4] Psychiatric Review Technique Form

6

such limitations in an RFC determination (Docket No. 8 at 13-15). However, this argument is unavailing.

16. The Second Circuit has found that failure to explicitly incorporate a claimant's limitations in concentration, persistence, or pace in a hypothetical is harmless error if "(1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]" Anthony S. v. Berryhill, 2018 U.S. Dist. LEXIS 160495 at *29 (N.D.N.Y. Sept. 20, 2018) (quoting McIntyre v. Colvin, 758 F.3d 146, 150 (2014).

17. In determining Plaintiff's RFC, the ALJ considered and discussed records of physical, neurological, psychiatric, and psychological examinations of Plaintiff conducted between 2013 and 2016. (R. at 25-30). Gregory Fabiano, Ph.D. performed a psychiatric examination of Plaintiff on December 23, 2013. (R. at 423-27). Dr. Fabiano found Plaintiff to be responsive and cooperative, with no deficits in her manner of relating, social skills, or overall presentation, and she was well-groomed. Id. In addition, Plaintiff was "coherent and goal[-]directed"; oriented to person, place and time; her mood was euthymic; and her affect was "of full range and appropriate in speech and thought content". Id. Attention and concentration were mildly impaired, as were Plaintiff's recent and remote memory, but Plaintiff's "intellectual functioning appeared to be average" and her insight and judgment were good. Id.

18. Dr. Fabiano observed that Plaintiff "appears to have some mild to moderate limitations in her ability to maintain attention and concentration, relate adequately with

7

others, and appropriately deal with stress due to psychiatric symptoms," and diagnosed Plaintiff with moderate MDD, ADHD, anxiety, and cocaine dependence in sustained full remission. Id. However, Dr. Fabiano concluded that these issues "do[] not appear to be significant enough to interfere with [Plaintiff's] ability to function on a daily basis," noting that Plaintiff "does not [] appear to have any limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, or make appropriate decisions" and that she is able to manage her money. Id. at 426-27.

19. The ALJ found this opinion to consistent with the evidentiary record, pointing to Plaintiff's testimony that she enjoys reading, which requires significant attention and concentration (R. at 28, 50); that she lives with her boyfriend and his son, (R. at 28, 51-53) and is able to travel independently (R. at 28, 423); the fact that Plaintiff is able to maintain personal hygiene, cook for herself, manage money, take medications appropriately, and follow up with medical treatment plans (R. at 27-28, 426-27, 651, 664, 674, 686); and that she is able to communicate effectively, asking and answering questions, her speech clear, coherent, and spontaneous, and insight and judgment are fair (R. at 27-28, 652, 656, 659, 662-63, 666, 667-68, 672, 674, 676, 6802, 683-84, 685-87, 691) Accordingly, the ALJ afforded Dr. Fabiano's opinion great weight. (R. at 28).

20. The ALJ also discussed Plaintiff's ongoing litigation to regain custody of her minor daughter, and that Plaintiff reported experiencing stress and feelings of frustration related to the case, (R. at 28, 650-51, 664, 670-71, 689), but noted that Plaintiff "understands that this is transitional stress due to the ongoing court case and her symptoms should resolve when the court case concludes" (R. at 664). At a January 9,

8

2015 psychiatric evaluation conducted at DENT Neurologic Institute ("DENT"), Plaintiff even "request[ed] a letter from [DENT] stating that she is stable and should be granted custody of her daughter, which [the evaluator] agreed to." (R. at 689).

21. The Commissioner has established a two-step process to evaluate a claimant's testimony regarding her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

Matejka v. Barnhart, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); see 20 C.F.R. §§ 404.1529, 416.929.[5]

22. "If the ALJ determines that the claimant is impaired, he must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about her symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. See Genier v. Astrue, 606 F.3d 46, 49 (E.D.N.Y. 2010). "Genuine conflicts in the medical evidence are for the

---

[5] The Social Security Administration has updated its guidance on evaluating symptoms in disability claims. See SSR 16-3p, 2016 WL 1119029 (effective March 16, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character" and it also aims to "more closely follow our regulatory language regarding symptom evaluation." Id. at *1. Accordingly, the Commissioner will consider "all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. Id. at *1-2. Moreover, the now rescinded SSR 96-7p and SSR 16-3p are not patently inconsistent, as a comparison of the two reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms. Compare SSR 16-3p with SSR 96-7p. Therefore, it is appropriate to evaluate Plaintiff's credibility in light of the new guidance the Administration has provided.

Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

23. During the hearing that lasted nearly an hour,[6] Plaintiff testified that she has been unable to work during the relevant period—April 14, 2013 through August 2, 2016—due to PTSD; anxiety and crying spells; difficulty talking; panic attacks (once or twice a week with medication); migraines (six or seven each month with medication); depression; paranoia; auditory hallucinations; poor memory, stress management, sleep, and concentration. (R. at 42-51). However, Plaintiff does not attribute these factors as the reason she left a full-time position as a night manager at a Dunkin Donuts, instead stating that she had felt "too busy," and that she "didn't want to live that life." (R. at 58). Plaintiff also does not claim that she was fired from a similar job at a different Dunkin Donuts (her most recent gainful employment which was terminated in April, 2013) because of these alleged limitations. (R. at 42).

24. Here, at the first step of the credibility analysis, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 25). But at the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Id.

---

[6] The June 27, 2016 hearing at which Plaintiff (assisted by counsel) and the VE testified lasted 54 minutes. (R. at 36-67).

25. In finding thusly, the ALJ considered Plaintiff's daily activities (normal, with some isolationism); her ability to regulate medications and attend regular appointments with counselors and doctor; the significant improvement in her PTSD, MDD, ADHD indicated in treatment notes; that evaluators consistently found Plaintiff to have good insight and judgment, and that her migraines are well-controlled with ongoing treatment[7] and thus would not bar Plaintiff from gainful employment or activity. (R. at 25-29). This Court finds no fault with the ALJ's credibility determination.

26. The ALJ's hypothetical questions limited the VE to consider only "work that is simple, repetitive and routine involving simple work-related judgment," and that which requires only "occasional public interaction." (R. at 63). These restrictions correlate to "unskilled work," "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," which require "little specific vocational preparation," ("SVP"). 20 C.F.R. § 404.1568(a), and account for Plaintiff's moderate social difficulties.

27. Although Plaintiff points out that when asked about a hypothetical individual who was off-task 15 percent of the day due to panic attacks or migraines, or who needed to lay down for an hour a day in addition to regularly scheduled breaks due to migraines or pain would not be able to sustain employment (Docket No. 8 at 5, R. at 65-66), the ALJ did not find that Plaintiff would require such exceptions. (R. at 25-28, 63-65).

28. Ample medical evidence supports the ALJ's determination that Plaintiff is capable of completing simple, routine, and repetitive tasks; that Plaintiff has good insight and judgment; and that she is able to interact adequately with others or the general public

---

[7] On January 26, 2016, Plaintiff described her response to migraine treatments as "fantastic," and records indicate that she was not having any breakthrough migraines. (R. at 654).

as long as those interactions are only occasional. Therefore, this Court finds the ALJ's hypothetical questions to the VE were appropriately restrictive and without error.

29. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds Plaintiff's blanket claim that the ALJ did not incorporate mental impairments in her RFC determination to be unpersuasive. The ALJ's determination was based on an adequate consideration of the medical and other evidence in the record, and the ALJ appropriately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace by restricting the VE to considering only unskilled work.

30. Therefore, this Court finds that the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:  December 6, 2018
        Buffalo, New York

                                    <u>William M. Skretny</u>
                                    WILLIAM M. SKRETNY
                                    United States District Court Judge